UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**NORTHERN DIVISION at COVINGTON**

| | |
|---|---|
| VENETIA M. ROSS, | ) |
| Plaintiff, | ) Civil Action No. 2:09-cv-177-JMH |
| v. | ) |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY | ) **MEMORANDUM OPINION AND ORDER** |
| Defendant. | ) |

\*\* \*\* \*\* \*\* \*\*

This matter is before the Court upon cross-motions for summary judgment on the plaintiff's appeal of the Commissioner's denial of her application for Supplemental Security Income and Disability Insurance Benefits [Record Nos. 11, 16].[1] The Court, having reviewed the record and being otherwise sufficiently advised, will deny the plaintiff's motion and grant the defendant's motion.

**I. OVERVIEW OF THE PROCESS**

The Administrative Law Judge ("ALJ"), in determining disability, conducts a five-step analysis:

1. An individual who is working and engaging in substantial gainful activity is not disabled, regardless of the claimant's medical condition.

2. An individual who is working but does not have a

---

[1] These are not traditional Rule 56 motions for summary judgment. Rather, it is a procedural device by which the parties bring the administrative record before the Court.

1

"severe" impairment which significantly limits his physical or mental ability to do basic work activities is not disabled.

3. If an individual is not working and has a severe impairment which "meets the duration requirement and is listed in appendix 1 or is equal to a listed impairment(s)", then he is disabled regardless of other factors.

4. If a decision cannot be reached based on current work activity and medical facts alone, and the claimant has a severe impairment, then the Secretary reviews the claimant's residual functional capacity and the physical and mental demands of the claimant's previous work. If the claimant is able to continue to do this previous work, then he is not disabled.

5. If the claimant cannot do any work he did in the past because of a severe impairment, then the Secretary considers his residual functional capacity, age, education, and past work experience to see if he can do other work. If he cannot, the claimant is disabled.

*Preslar v. Sec'y of Health and Human Services*, 14 F.3d 1107, 1110 (6th Cir. 1994) (citing 20 CFR § 404.1520 (1982)). "The burden of proof is on the claimant throughout the first four steps of this process to prove that he is disabled." *Id.* "If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Secretary." *Id.*

## II. STANDARD OF REVIEW

In reviewing the ALJ's decision to deny disability benefits, the Court may not try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility. *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Instead, judicial review of the ALJ's decision is limited to an

inquiry into whether the ALJ's findings were supported by substantial evidence, 42 U.S.C. § 405(g), *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001), and whether the ALJ employed the proper legal standards in reaching his conclusion, *see Landsaw v. Sec'y of Health and Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence" is "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip*, 25 F.3d at 286.

**III. FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff was forty-six-years-old at the time that she allegedly became disabled on July 17, 2003, and was fifty-years-old at the time of the Commissioner's decision on November 27, 2007 [AR at 15-30, 52]. Plaintiff has a high school education and prior work experience as a shipping and receiving clerk, packer, referral and information clerk, receptionist, and accounts payable and receivable clerk [AR at 65-66, 84-86, 740-41.] She alleges that she is unable to work due to low back problems, status post surgery for a herniated disc, chronic back pain, and depression [AR at 64, 465].

Plaintiff first filed her claim for Disability Insurance Benefits on February 17, 2004, and her claim was denied at the initial and reconsideration levels. She filed a request for a hearing. Following that hearing, the ALJ denied her claim for

3

benefits on the grounds that she had the residual functional capacity ("RFC") to perform sedentary work and could return to her past relevant work as an accounts payable and receivable clerk and as a receptionist. She asked the appeals counsel to review the ALJ's June 29, 2006, decision, and the Appeals Council vacated the decision and remanded the case after finding that the ALJ had not fully evaluated the treating source opinions of Drs. Grefer and Reutman, evaluated the limiting side effects of the claimant's medications, nor specifically evaluated the third party statement made by the claimant's mother. On remand, the ALJ was directed, generally, to give further consideration to the treating, examining source, and non-examining source opinions, explain the weight given to each opinion, request additional medical opinion evidence as appropriate, further evaluate the claimant's subjective complaints and symptoms in accordance with the disability regulations, further consider the claimant's maximum RFC and provide specific report for the assessed limitations, obtain evidence from a medical expert to clarify the nature and severity of the claimant's impairments, if necessary, and obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base.

A subsequent hearing was held, and, after Plaintiff's testimony, Plaintiff's representative explained that there was evidence obtained in connection with a subsequent application that

4

was now available for review in the matter. Although a VE was present, no testimony was taken following the interruption, and the ALJ stated that she would take the matter under advisement, determining whether further testimony was needed at a later date. Ultimately, the ALJ based her decision on the testimony of the VE from the first hearing as to the skill and exertional level of Plaintiff's past relevant work [DE 29], tacitly announcing that no supplemental hearing was necessary.

In her decision, the ALJ concluded that Plaintiff had the following severe impairments: lumbar disc disease status post hemilaminectomy and discectomy, osteoarthritis, depressive disorder, and anxiety disorder [AR at 21]. She then determined that Plaintiff did not have an impairment or combination fo impairments that met or medically equaled the Listing of Impairments (Listings) found at 20 C.F.R. pt. 404, subpt. P, app. 1 [AR at 24]. She concluded that Plaintiff retained the residual functional capacity ("RFC") to perform a range of sedentary work activity, as follows:

> The claimant is able to lift up to 10 pounds, stand or walk for at least 2 hours in an 8 hour workday, sit about 6 hours in an 8 hour workday, occasionally stoop, bed, twist, crouch, or crawl, and never climb steps or ladders. The claimant requires the option to alternate her position between sitting and standing once ever half hour. She cannot perform complex work, but she is able to understand, remember, and follow simple instructions, sustain attention for extended periods, and perform unskilled or semi-skilled

5

work tasks.  She should not interact with the
general public on a regular basis.[2]

[AR at 24.]  The ALJ ultimately concluded that these limitations did not preclude the performance of Plaintiff's past relevant work as an accounts receivable and payable clerk [AR at 29] based on the testimony of the VE at the first hearing.  The ALJ then concluded that Plaintiff was not disabled at any time through November 27, 2007, the date of her decision [AR at 7].

Plaintiff timely pursued and exhausted her administrative and judicial remedies, and this matter is ripe for review and properly before this Court under § 205(c) of the Social Security Act, 42

---

[2]The ALJ had, in her earlier decision, articulated a nearly identical RFC, as follows:

> The claimant has the residual functional capacity to lift up to 10 pounds, stand or walk at least 2 hours in an 8 hour workday, sit about 6 hours in an 8 hour workday, occasionally stoop, bend, twist, crouch, or crawl, and never climb steps or ladders; in addition, the claimant requires the option to alternate her position between sitting and standing once every half hour.  The claimant has no mental limitations that would significantly affect her ability to perform unskilled or semi-skilled work activities.

[AR 315.] In response to a hypothetical based on that RFC, in which the VE was to "assume that the person would be limited to alternate sit/stand, sedentary work alternating every half hour . . . [and] occasional stopping, bending, twisting, crouching, crawling; no climbing of stairs, ladders; no specific mental," the VE testified that Plaintiff could peform her past work as an accounts payable/receivable clerk and receptionist, as well as other types of work, such as payroll time clerk and order correspondence clerk. [DE 743.]

U.S.C. § 405(g).

**IV. DISCUSSION**

To establish disability, a plaintiff must show that she is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which is expected to result in death or to last twelve or more months. 42 U.S.C. § 423(d)(1)(A). Plaintiff also bears the initial burden of proving the existence and severity of limitations caused by her impairments and that she is precluded from performing her past relevant work. *See Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

Plaintiff argues that the ALJ erred when she did not accept opinions from Plaintiff's treating physicians, Drs. Michael A. Grefer and William Reutman, stating limitations that would ultimately mean that she was unable to perform sedentary work activity and was disabled. Certainly, medical source opinions of treating physicians are to be given great weight unless the ALJ articulates good reasons for not giving the opinions great weight. *See* 20 C.F.R § 404.1527; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). However, if a treating source opinion is not supported by objective medical evidence, then the ALJ is entitled to give the opinion less weight as long as he sets forth good reasons for the weight given the treating source opinion. *See* 20 C.F.R. § 404.1527(d)(2); *see also Bass v. McMahon*, 499 F.3d 506,

512 (6th Cir. 2007); *Wilson*, 378 F.3d at 544-45 (holding ALJ must "give good reasons" for not giving weight to a treating physician).

In the instant matter, the ALJ did not ignore the opinions of Plaintiff's treating physicians, Drs. Grefer and Reutman, in her decision dated November 27, 2007. Instead she provided good reasons for rejecting their assessments of Plaintiff's functional abilities. The ALJ noted that the treatment records of Drs. Reutman and Grefer documented "mostly *negative* neurological findings on examination" [AR 25 (emphasis in original)]. Specifically, the ALJ noted that repeated examinations by Dr. Reutman demonstrated negative straight leg raising tests and normal lower extremity reflexes, which findings did not support the extreme limitations set forth in his physical capacities assessment [AR 25, 156, 528, 614, 643-44, 648]. Further, the ALJ found that Dr. Reutman based his opinion that Plaintiff could not hold down a job based on diagnoses, not objective findings [AR 25, 573 (]. The mere fact of a diagnosis does not necessarily say anything about the severity of the condition. *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988). Finally, the ALJ thought it was relevant that Dr. Reutman thought that a formal functional capacity evaluation was necessary to assess Plaintiff's abilities but did not perform or order such an evaluation performed before completing his own assessment [AR 25, 528].

The ALJ also concluded that Dr. Grefer's treatment notes

8

neither "document[ed] the same level of severity that he described in his questionnaire and letters" [AR 26] nor supported his assessment of Plaintiff's functional abilities or his other disability statements [AR 25], then spelled out the reasons for his conclusion. Specifically, she found that Dr. Grefer's treatment notes from 2004 to January 2006 were "silent regarding neurological findings" [AR 25, 665, 668, 671, 695] and that subsequent examinations suggested only mild changes in her condition [AR 26, 492]. The ALJ also found it odd that Drs. Grefer and Reutman placed limitations on Plaintiff's ability to handle and reach even though she had no impairment of the upper extremities [AR 26, 303, 656].

In other words, the ALJ discussed the opinions of Drs. Reutman and Grefer at length, articulating ample reasons – supported by the evidence of record – for not giving their opinions controlling weight. Specifically, she concluded that no objective findings in their treatment records supported their opinions that Plaintiff had disabling limitations. Thus, the ALJ properly decided that she would give their opinions little weight [AR 26], having articulated this rationale in her decision. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 286 (6th Cir. 2009) (ALJ did not violate treating physician rule having provided three basic reasons for not giving controlling weight to physician's opinion).

Neither did the ALJ err when she declined to adopt the

9

assessment set forth in a mental capacities questionnaire prepared by Dr. Bruce Snider, Plaintiff's treating psychiatrist, which suggested that Plaintiff had no useful ability to deal with work stresses, maintain attention and concentration, and demonstrate reliability [AR 26, 568-69]. The ALJ found that Dr. Snider's assessment was inconsistent with his own treatment records [AR 26], which showed that Plaintiff's GAF scores ranged in the 50s and, thus, indicated no more than moderate limitations of function [AR 52, 585-86, 589-91].[3]

Additionally, although Plaintiff complains that the ALJ failed to give proper weight to Dr. John Kelly's functional capacities assessment, completed in September 2007 and which suggested that she would be unable to perform sedentary work on a full-time basis [AR 26, 616-18], there is no indication that he was her "treating neurologist," as she describes him [Pl. Br. at 1, 10]. Rather, Dr. Kelly examined Plaintiff on one occasion, in May 2007 [AR 26, 581-84], which relationship is so limited that the rationale of the treating physician doctrine does not apply. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

Nor did the ALJ erroneously substitute her opinion for that of

---

[3] GAF scores in the range of 51-60 suggest moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). American Psychiatric Ass'n, Diagnostic and Statistical Manual – Text Revision 34 (4th ed. 2000) (DSM-IV-TR).

a medical expert when she declined to adopt the functional assessments prepared by the various physicians because determining RFC is an administrative decision based upon all of the relevant evidence in the record, not just medical evidence. *See* 20 C.F.R. § 416.927(e)(2); SSR 96-5p, 1996 WL 374183, at *5 (S.S.A.). Further, the assessment of a claimant's RFC and the determination of whether a claimant is disabled is a responsibility which rests solely with the Commissioner, i.e., the opinion that was articulated by the ALJ and adopted by the Commissioner in the instant case. *See* 20 C.F.R. § 404.1527(e). These opinions "are not medical opinions . . . but are, instead, opinions on issues reserved for the Commissioner because they are administrative findings that are dispositive of a case, i.e., that would direct the determination or decision of disability." 20 C.F.R. § 404.1527(e); *see* SSR 96-5p, 1996 WL 374183, at *2. An ALJ will consider opinions from medical sources, but the final decision is "reserved for the Commissioner." 20 C.F.R. § 404.1527(e).

Finally, in its order of remand, the Appeals Council did instruct the ALJ to obtain supplemental evidence from a VE to clarify the effect of the assessed limitations on Plaintiff's occupational base [AR 321], among other instructions. Plaintiff argues that the ALJ erred because she did not obtain VE testimony at the hearing on this matter after remand. The Court has reviewed the transcript of the second hearing and notes that Plaintiff

interrupted the questioning of the VE at the second hearing to raise concerns over the completeness of the medical record [AR 794-808] and to point out materials from a subsequent application that were not before the ALJ in the present matter. Then, in response to the ALJ's expressed intent to hold a supplemental hearing [AR 805], Plaintiff's representative suggested that any further questioning of the VE was unnecessary because the VE would testify that Plaintiff was unable to work if she had the limitations suggested by Drs. Grefer, Reutman, and Snider [AR 806].

From these statements, the Appeals Council concluded that Plaintiff's representative was saying that a supplemental hearing with further testimony from Plaintiff was ultimately unnecessary to complete the record [AR 10]. As to whether it was necessary to reconvene the hearing in order to take new or additional testimony from a VE, the ALJ already had testimony from the VE from the first hearing regarding the skill and exertional level of Plaintiff's past relevant work, obtained in response to a hypothetical which echoed the RFC found in the second decision, after remand. Thus, without a supplemental hearing or further inquiries of a VE, there existed substantial evidence of record from which the ALJ could reach a conclusion as to Plaintiff's ability to perform that work. In other words, Plaintiff cannot show that she was denied any process that she was due or that she was prejudiced by the decision not to hold a supplemental hearing so that a VE could testify

12

again.

Finally, Plaintiff argues that the ALJ erred in concluding that she was capable of performing her past relevant work as an accounts payable and receivable clerk as that job is generally performed in the national economy and as she performed it in the past [AR 29] based on VE Parsons' testimony. The VE identified her former position as DOT number 214.462-010 in the Dictionary of Occupational Titles [AR 741, 712-713], which refers to an accounts-adjustable clerk in the railroad transportation industry. By contrast, Plaintiff states that she was an accounts payable and receivable clerk at D&R Pharmaceutical Services, not in the railroad transportation industry. An erroneous citation to the DOT is not per se reversible error, *see Fischer v. Barnhart*, 181 Fed. App'x 359, 366 (4th Cir. 2006), such that the VE's provision of an incorrect DOT code for Plaintiff's past relevant work would require a remand. Here, the VE testified that his testimony was consistent with the DOT, and Plaintiff never cross-examined the VE on this issue nor raised this issue administratively [AR 325-35, 696-704, 746]. *See Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 606 (6th Cir. 2009). Finally, she has not identified how such an erroneous citation to the DOT has resulted in a wrongful conclusion by the ALJ. Accordingly, the Court concludes that the ALJ's determination that Plaintiff could perform her past work was supported by substantial evidence.

**V. CONCLUSION**

For the foregoing reasons, **IT IS ORDERED:**

(1) That the Commissioner's motion for summary judgment [Record No. 16] be, and the same hereby is, **GRANTED;** and

(2) That Plaintiff's motion for summary judgment [Record No. 12] be, and the same hereby is, **DENIED.**

This the 16th day of December, 2010.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge